**UNITED STATES of America,**
**Plaintiff—Appellee,**

**v.**

**Saul TAPIA, Defendant—Appellant.**

No. 04–50585.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 16, 2005.

Decided Oct. 21, 2005.

**558**

Alessandra P. Serano, AUSA, USSD–Office of the U.S. Attorney, San Diego, CA, Jessica M. Kass, United States Department of Justice Southern District of California, San Diego, CA, for Plaintiff–Appellee.

Nancy G. Kendall, Esq., San Diego, CA, for Defendant–Appellant.

Before FARRIS, THOMPSON, and BYBEE, Circuit Judges.

## MEMORANDUM *

Defendant Saul Tapia appeals his conviction and sentence for importing marijuana, in violation of 21 U.S.C. §§ 952 and 960, and possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We have jurisdiction under 28 U.S.C. § 1291. We affirm the conviction, and remand the sentence for further consideration.

### A. Rivas's Plea Agreement

Tapia first argues that the government violated his due process rights by not disclosing the entirety of its plea agreement with prosecutorial witness Maribel Rivas. We review this claim de novo. *United States v. Cooper*, 173 F.3d 1192, 1203 (9th Cir.1999) (citations omitted). Due process requires that the government disclose certain impeachment material to the defense, including plea agreements with witnesses. *See Giglio v. United States*, 405 U.S. 150, 154—55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). At Tapia's trial, Rivas explained that she had agreed to testify pursuant to a plea bargain. She had pled guilty to a reduced charge, but still faced a potential sentence of five years in prison, a fine, and deportation. After Tapia's trial, and approximately two months after he was sentenced, the government moved to dismiss the case against Rivas. The district court granted that motion, ordered her guilty plea "terminated," and dismissed the case against her.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

There is no indication that the government's lenient treatment of Rivas was the result of an agreement with her that existed before Tapia's trial was completed. In fact, Rivas's attorney told the district court that the government first displayed a willingness to consider deferred proceedings against Rivas on the day following the conclusion of Tapia's trial. Having considered the applicable evidence, we conclude that the government fully disclosed its plea agreement with Rivas as it existed during Tapia's trial. *See United States v. Ramirez,* 608 F.2d 1261, 1267 (9th Cir.1979) ("[T]he mere fact that the witness was subsequently allowed to plead to a lesser offense in and of itself is not sufficient.... Appellant has not presented us with any substantial indicia of a prior agreement." (internal citations omitted)).

## B. Agent's Testimony at Trial

■ Tapia contends his Fifth Amendment rights were violated when Special Agent McNabb testified at his trial that he had not been "forthcoming" during a post-*Miranda* interrogation. Because Tapia raises this issue for the first time on appeal, we review for plain error. *Johnson v. United States,* 520 U.S. 461, 466—67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Tapia characterizes the agent's testimony as improper commentary by one witness on another witness's credibility (i.e., truthfulness). *See United States v. Geston,* 299 F.3d 1130, 1135—37 (9th Cir.2002); *United States v. Sanchez,* 176 F.3d 1214, 1220—21 (9th Cir.1999); *United States v. Sanchez–Lima,* 161 F.3d 545, 548 (9th Cir.1998).

When asked about Tapia's "demeanor," Agent McNabb responded that he was "glaring," "confrontational," and "not very forthcoming." The agent explained that she frequently had to pose four or five questions to Tapia before being able to piece together a meaningful response. We conclude that the agent's testimony was not a comment on Tapia's truthfulness, but rather a probative description of his behavior during interrogation. *See United States v. Velarde–Gomez,* 269 F.3d 1023, 1030 (acknowledging the admissibility of "demeanor" evidence, such as the defendant's "apparent nervousness"); *cf. United States v. Geston,* 299 F.3d 1130, 1135—37 (9th Cir.2002) (finding error when a witness was asked whether he believed another witness "would be lying" if he testified to certain facts); *United States v. Sanchez,* 176 F.3d 1214, 1220—21 (9th Cir. 1999) (finding error when a witness was asked whether he thought another witness's extrajudicial statements were "truthful"); *United States v. Sanchez–Lima,* 161 F.3d 545, 548 (9th Cir.1998) (finding error when a witness testified that he believed another witness "told the truth" in his extrajudicial statements).

Nor was admission of the agent's testimony an improper comment on Tapia's silence, because the agent only testified about the statements Tapia made prior to invoking his right to silence, none of which involved the invocation itself. *Cf. United States v. Bushyhead,* 270 F.3d 905, 913 (9th Cir.2001) ("The entirety of [defendant]'s statement was an invocation of his right to silence and is therefore protected....").

## C. Comments on Tapia's Poverty

■ Tapia argues the government committed reversible error by impermissibly eliciting testimony of and otherwise commenting upon his poverty. He raises this issue for the first time on appeal, and we therefore review for plain error. *Johnson,* 520 U.S. at 466—67, 117 S.Ct. 1544. To reverse under this standard, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Id.* (citing *United States v. Olano,* 507 U.S. 725, 732,

113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). If these three conditions are met, we may exercise our discretion to reverse, but "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks removed). Here, the government elicited testimony that Tapia was unemployed, and during closing argument suggested that his joblessness provided motive for importing the drugs.

While this impermissible comment on poverty fulfills the first two conditions for plain error, *see United States v. Mitchell,* 172 F.3d 1104, 1108—09 (9th Cir.1999), the third and fourth conditions remain unmet. The government presented strong evidence of guilt independent of Tapia's unemployment, including his acquisition of the marijuana-bearing vehicle in Mexico, his behavior at the border, his statements to customs agents, and his demeanor during interrogation. Given the strong, independent evidence of guilt, we conclude that the government's impermissible poverty evidence and argument affected neither Tapia's substantial rights, nor the fairness, integrity, or public reputation of judicial proceedings. *See Romero–Avila,* 210 F.3d 1017, 1023 (9th Cir.2000).

## D. Drug Quantity

■ Tapia argues that the district court erred in not entering a judgment of acquittal because the jury could not have found the marijuana weight to be between 10 and 20 kilograms. We disagree.

We will uphold a conviction "if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of each element of the crime charged." *United States v. Sanchez–Mata,* 925 F.2d 1166, 1166 (9th Cir.1991). Here, both parties agree that the marijuana weight is not an element of the crime, but they argue that the "beyond a reasonable doubt" standard applies because the issue was submitted to the jury.

Assuming that the "beyond a reasonable doubt" standard applies, we conclude the government met that burden. The government found 21 packages of drugs in Tapia's vehicle, each double-wrapped in clear plastic, weighing a total of almost 22 kilograms. The DEA, using one of the packages as a sample, calculated what percentage of a given package's total weight was attributable to marijuana (as opposed to packaging). The government multiplied that percentage by the total gross weight of all the packages of marijuana in Tapia's vehicle, and that yielded a net weight of marijuana of 19 kilograms. Guided by this straightforward calculation, a rational jury could have found, beyond a reasonable doubt, that the marijuana weighed between 10 and 20 kilograms.

## E. Sentencing Remand

Both parties agree that Tapia's sentence must be remanded to the district court for consideration in light of *United States v. Ameline,* 409 F.3d 1073, 1084—85 (9th Cir.2005) (en banc). We agree. There is no indication in the record before us that the district court would have imposed the sentence it did had it known that the guidelines were advisory rather than mandatory. As a result, we remand Tapia's sentence for further proceedings consistent with *Ameline.*

**CONVICTION AFFIRMED; SENTENCE REMANDED.**